# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN
## MADISON DIVISION

| | |
|---|---|
| **ANDREW BRINK** and **FARTINA SEGURA**, individually, and on behalf of others similarly situated, | Case No: |
| Plaintiffs, | Hon. |
| v. | Mag. |
| **AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,** a corporation, | |
| Defendant. | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs Andrew Brink and Fartina Segura ("Plaintiffs"), hereby bring this Collective/Class Action Complaint against Defendant, American Family Mutual Insurance Company, S.I., ("Defendant"), and state as follows:

## INTRODUCTION

1.    This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law ("IMWL"), §§ 820 ILCS 105/1, *et seq.,* and the Illinois Wage Payment and Collection Act ("IWPCA"), §§ ILCS 115/1, *et seq.*, Louisiana. R.S.

§§23:631, *et seq.*, and common law.

2.     Defendant American Family provides vehicle, property, life, and commercial insurance products to customers throughout the United States. To provide its services, American Family employed (and continues to employ) numerous customer service representatives and other remote call workers—including Plaintiffs and the individuals that make up the putative or potential class. While exact job titles may differ, the employees who worked as remote call workers were subjected to the same or similar illegal pay practices for similar work throughout the United States.

3.     In support of its over 10,000 remote workers, Defendant employs hundreds of people in remote call-center roles across the United States.[1]

4.     Defendant used a number of titles, including, but not limited to, Customer Service Representative I and II, Sales Representative I and II, Agency Title and Sales Representative I and II, Senior Representative I and II, Team Manager, Life Representative I and II, and Business Representative I and II, to refer to remote call workers (collectively referred to herein as "RCWs").

5.     Defendant classified its RCWs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

6.     Defendant employed Plaintiff Brink as an hourly remote call center employee with the job title of Customer Service Representative II and Plaintiff Segura as an hourly remote call center employee with the job title of Customer Service

---

[1] *See* https://workatuma.com/ (last visited Dec. 10, 2023).

Representative.

7.   The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's hourly call center employees, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

8.   One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* at p. 2.

9.   More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

10.   Defendant violated the FLSA, state wage-and-hour law, and common law by systematically failing to compensate its RCWs for work tasks completed before and after their scheduled shifts and during their unpaid meal periods, when they were not logged into Defendant's timekeeping system, which resulted in RCWs not being paid for all hours worked, whether at the employee's base rate in non-overtime weeks,

---

[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited Aug. 8, 2024).

or overtime hours worked in weeks where RCWs worked at least forty (40) hours.

11.    More specifically, Defendant failed to compensate RCWs for the substantial time they spent performing activities such as turning on and booting up their computer prior to clocking into Defendant's timekeeping system.

12.    Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding them unpaid back wages, liquidated damages, attorneys' fees and costs to make them and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

13.    At the earliest time possible, Plaintiffs will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

14.    This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

15.    Additionally, this Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

16.    The Court has supplemental jurisdiction over Plaintiffs' state law claims

pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

17.     Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's RCWs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

18.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District and employs individuals within the state of Wisconsin.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and Defendant conducts business in this District.

## PARTIES

20.     Plaintiff Andrew Brink is a resident of Centralia, Illinois and worked for Defendant as a non-exempt RCW in Illinois from January 2021 through March 2023. Defendant compensated Plaintiff Brink through the payment of an hourly rate, most recently at $21.00 per hour. Plaintiff Brink signed a consent to join this collective action, which is attached as **Exhibit A**.

21.     Plaintiff Fartina Segura is a resident of Tennessee and worked for Defendant as a non-exempt RCW in Jennings, Louisiana from July 2023 through October 2023. Defendant compensated Plaintiff Segura through the payment of an

hourly rate, most recently at $23.00 per hour. Plaintiff Segura signed a consent to join this collective action, which is attached as **Exhibit B**.

22.    Additional Opt-In Plaintiffs were or are employed by Defendant as RCWs during the past three years and their consent forms will also be filed in this case.

23.    Defendant American Family Mutual Insurance Company, S.I., is a domestic insurance company, licensed to do business in the state of Wisconsin. American Family may be served via its registered agent, Corporate Service Company at 8040 Excelsior Dr., Ste. 400, Madison, Wisconsin 53717-2915.

## GENERAL ALLEGATIONS

24.    Prior to hiring prospective RCWs, Defendant provided them with a written offer setting forth the job requirements and rate of pay.

25.    Defendant maintained documents demonstrating the promised hourly wage for each RCW including, but not limited to: offer letters, paystubs, and/or other payroll records.

26.    Plaintiffs each received an offer from Defendant to work as a RCW, and they accepted Defendant's respective offers with the understanding that the base hourly rate would be paid for all hours worked.

27.    Plaintiffs performed under their respective agreements with Defendant by carrying out their job duties and responsibilities. More specifically, Plaintiffs made and answered calls concerning customer service, acted as the first point of contact when customers wanted to report or file a claim, mentored other customer service

representatives, and periodically called customers to follow up. Plaintiffs additionally performed the required unpaid off-the-clock work explained below.

28.     Defendant paid its RCWs at varying hourly rates.

29.     Defendant's RCWs, including Plaintiffs, typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week. While Defendant has access to all payroll records, Plaintiffs do not, and there were one or more instances during Plaintiffs' employment when they worked forty (40) hours or more in a workweek and less than forty (40) hours in a workweek.

30.     Defendant provided training to hourly call center employees, on, *inter alia*, how to carry out their day-to-day job duties; how to load and log into their computer programs at the beginning of the day; how to track their time in Defendant's timekeeping system; how attendance would be monitored; call quality expectations; and Defendant's numerous policies and procedures. The training that Defendant provided to all of its RCWs was substantially the same.

31.     For purposes of compensation, Defendant's RCWs clocked in and out for their shifts on their computers using Defendant's timekeeping application.

32.     At all relevant times, Defendant controlled Plaintiffs' and all other RCWs' work schedules, duties, protocols, applications, assignments, and employment conditions.

33.     Defendant required Plaintiffs and all other RCWs to use high speed internet, a computer, and a variety of essential and indispensable computer programs, applications, and servers in order to perform their job duties.

34. Defendant instructed Plaintiffs and other similarly situated RCWs to be "call ready" the moment their scheduled shifts started. This required Defendant's RCWs to perform daily off-the-clock tasks prior to the start of their shifts and before they clocked into Defendant's timekeeping system. During the boot-up and login process, Defendant's RCWs sometimes experienced technical difficulties or updates, increasing the amount of off-the-clock work they performed that day.

35. Defendant's RCWs necessarily had to perform off-the-clock work every shift because Defendant relied exclusively on a timekeeping system that was accessible only within the computer to track its RCWs' hours, including Plaintiffs' hours, worked. Therefore, Defendant's RCWs were unable to clock in unless and until they performed off-the-clock work before the start of their scheduled shifts and before they could access and log into (and therefore clock into) the program.

36. Defendant enforced its "call ready" policy through its uniform compensation, attendance, and adherence procedures, and the call quality assurance system it used to monitor and grade RCWs' calls. For example, Defendant routinely evaluated, and at times disciplined, RCWs based on responsiveness, communication, availability, timeliness, attendance, adherence to deadlines, and work quality. Further, Defendant assessed and evaluated its RCWs' handling of calls.

37. Defendant's RCWs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the RCWs' work and RCWs could not perform their jobs without them.

38.    Defendant's RCWs also performed off-the-clock work when returning from lunch and preparing themselves to be call ready the moment their meal periods concluded.

39.    Similarly, Defendant's RCWs, including Plaintiffs, performed work off-the-clock at the end of their scheduled shift, after clocking out of Defendant's timekeeping system, when they shut-down/log out of the programs and applications that they utilized during their shifts.

40.    The pre-, mid-, and post-shift off-the-clock time Plaintiffs and Defendant's RCWs spent booting-up/logging into and shutting down their computer, applications and programs directly benefitted Defendant and was integral and indispensable to the RCWs' job responsibilities.

41.    As a result of the pre-, mid-, and post-shift off-the-clock work described herein, Plaintiffs and other RCWs were unlawfully deprived of approximately eighteen (18) to twenty (20) minutes of compensation every shift.

42.    At all relevant times, Defendant was able to track the amount of time Plaintiffs and other RCWs spent in connection with the pre-, mid-, and post-shift activities; however, Defendant failed to do so and failed to compensate them for the off-the-clock work they performed, thus breaching its agreements with Plaintiffs and other RCWs.

43.    Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

9

44.     Despite knowing Plaintiffs and all other RCWs performed this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

45.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiffs and similarly situated RCWs booted-up and logged into their computer each shift, along with their clock-in and out times in the timekeeping system.

46.     Because Defendant required its RCWs, including Plaintiff, to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time RCWs spent working for Defendant. Thus, the hours reflected on the RCWs' paystubs are also inaccurate representations of the hours they actually worked.

**A. Pre-Shift Off-the-Clock Work**

47.     The off-the-clock pre-shift process took substantial time, approximately eight (8) to ten (10) minutes per shift. Specifically, before each shift, RCWs were required to undertake essential work tasks such as turning on or warming up their computer; waiting for the computer to turn on, and on occasion, download updates; logging into their computer with a username and password; logging into the Defendant's VPN; opening a browser; logging into Defendant's timekeeping system; and clocking in.

48.     Defendant's RCWs had to complete this process while off-the-clock, before the start of their scheduled shifts and before fielding calls. Consequently, the

RCWs had to begin working at least eight (8) to ten (10) minutes before their scheduled shifts to complete their start-up and log-in activities.

49.    Defendant's RCWs were not compensated for all of this time because Defendant prohibited and/or prevented RCWs from clocking into its timekeeping software before they performed some, if not all, of the pre-shift off-the-clock work.

50.    The pre-shift off-the-clock work RCWs performed directly benefited Defendant, and was integral and indispensable to their job duties and responsibilities as RCWs.

**B. Meal-Period Off-the-Clock Work**

51.    Defendant promised its RCWs one unpaid meal period during each eight (8) hour shift.

52.    Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

53.    Defendant did not provide RCWs with legitimate bona fide meal periods because it required the RCWs to return to their computer stations prior to the end of

11

their unpaid meal periods to log back in and place themselves in a "ready" state so they could resume taking calls promptly at the end of their scheduled meal periods.

54.     If RCWs were not logged back into the phone system and ready to take calls promptly at the conclusion of their scheduled meal periods, they were considered out of adherence and could be subjected to disciplinary action.

55.     The login process during meal periods was truncated because the RCWs' computers were already on and many of the programs that they used during their scheduled shifts remained opened; however, RCWs spent approximately five (5) minutes performing this off-the-clock work during their unpaid meal periods. Thus, Defendant maintained a common policy and practice pursuant to which it failed to pay RCWs for no less than five (5) minutes of work performed during their meal periods.

56.     The off-the-clock work Plaintiffs and other RCWs performed during their meal periods was compensable, directly benefited Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the RCWs' job duties and responsibilities.

57.     Defendant's management knew or should have known that Plaintiffs and other RCWs performed this off-the-clock work, but permitted and even rewarded it through Defendant's schedule adherence metrics.

**C. Post-Shift Off-the-Clock Work**

58.     Pursuant to Defendant's policies, training and direction, Plaintiffs and similarly situated RCWs were required to clock out as soon as their scheduled shift

ended or the moment they finished fielding their last call for the day and before shutting down their systems and computer. Plaintiffs and other RCWs were not allowed to begin the logout and shutdown process until they completed their last fielded call.

59.     This resulted in Plaintiffs and other RCWs performing an additional five (5) minutes of off-the-clock work every shift.

60.     The post-shift off-the-clock work Plaintiffs and other RCWs performed was compensable, directly benefited Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the RCWs' job duties and responsibilities.

61.     Unpaid wages related to the off-the-clock work described herein are owed to Plaintiffs at the FLSA mandated overtime premium of one and one-half the Plaintiffs' regular hourly rate because Plaintiffs worked in excess of forty (40) hours in a workweek.

**D. The Off-the-Clock Work Results in Viable "Gap Time" Claims**

62.     "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

63.     Plaintiffs and all similarly situated RCWs regularly worked non-overtime

13

hours (i.e. "gap time") for which they were not paid.

64.     During the weeks that RCWs did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's agreements with them.

## NATIONWIDE COLLECTIVE ACTION ALLEGATIONS

65.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former hourly RCWs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

66.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

67.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and others similarly situated.

68.     Consistent with Defendant's policies and practices, Plaintiffs and the proposed FLSA Collective were not paid for all regular and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

69.     All of the work Plaintiffs and the proposed FLSA Collective performed

was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiffs and the proposed FLSA Collective performed.

70.     Defendant was aware, or should have been aware, that federal law required it to pay Plaintiffs and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

71.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

    a.  Willfully failing to pay its employees, including Plaintiffs and the FLSA Collective members, for all regular hours they worked off-the-clock in non-overtime workweeks;

    b.  Willfully failing to pay its employees, including Plaintiffs and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

    c.  Willfully failing to record all of the time that its employees, including Plaintiffs and the FLSA Collective members, worked for the benefit of Defendant.

72.     Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

73.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly

15

situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

74.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are: (1) required to work uncompensated boot up and log out time; and (2) entitled to their regular hourly wage in non-overtime workweeks, overtime gap time in applicable weeks, and overtime for hours worked over forty (40) in a week.

75.     Plaintiffs estimate the FLSA Collective, including both current and former RCWs during the relevant period, includes hundreds of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

76.     The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

77.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3)

on behalf of themselves and on behalf of:

> *All current and former hourly RCWs who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiffs reserve the right to amend this definition if necessary.

78.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably estimate there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

79.    There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

  a. Whether Defendant failed to keep accurate time and payroll records for Plaintiffs and the Rule 23 Nationwide Class;

  b. Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

  c. Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications and networks is compensable time under applicable law;

  d. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

e. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

80. Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

81. Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiffs retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

82. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

83. This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages

issues in this case to be resolved with relative ease.

84.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

85.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 ILLINOIS CLASS ACTION ALLEGATIONS

86.    Plaintiff Brink brings Count Four of this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of himself and all other members of the class ("the Rule 23 Illinois Class") defined as:

*All current and former customer service representatives or persons with jobs performing substantially identical functions and/or duties to customer service representatives employed by Defendant in the State of Illinois during the applicable statutory period.*

87.    The Rule 23 Illinois Class is so numerous that joinder of all class members is impracticable. Plaintiff Brink is unable to state at this time the exact size of the potential Rule 23 Illinois Class, but upon information and belief, avers that it consists of at least 100 persons. Rule 23 Illinois Class members should be easy to identify from Defendant's computer systems and electronic and personnel records.

88.    There is a well-defined community of interests among Rule 23 Illinois

19

Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Illinois Class. These common legal and factual questions, include, but are not limited to, the following:

> (a) whether Plaintiff Brink and the Rule 23 Illinois Class members performed unpaid pre- and post-shift work activities, and if so, whether such work activities are compensable;

> (b) whether Defendant failed to pay Plaintiff Brink and the Rule 23 Illinois Class minimum wages and time-and-a-half their regular rate of pay for hours worked in excess of 40 each workweek; and

> (c) whether Plaintiff Brink and the Rule 23 Illinois Class members are owed wages for time spent performing pre- and post-shift work activities, and if so, the appropriate amount thereof.

89.    Plaintiff Brink's claims are typical of the claims of other members of the Rule 23 Illinois Class in that he and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff Brink and the Rule 23 Illinois Class members' claims arise out of the same uniform course of conduct by Defendant, and are based on the same legal theories.

90.    Plaintiff Brink will fairly and adequately protect the interests of the Rule 23 Illinois Class. His interests are not antagonistic to, but rather are in unison with, the interests of the other Rule 23 Illinois Class members. The named Plaintiffs' counsel have broad experience in handling class action wage-and-hour litigation and is fully qualified to prosecute the claims of the Rule 23 Illinois Class in this case.

91.    The questions of law or fact that are common to the Rule 23 Illinois Class predominate over any questions affecting only individual members. The primary

questions that will determine Defendant's liability to the Rule 23 Illinois Class, listed above, are common to the classes as a whole and predominate over any questions affecting only individual class members.

92.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Rule 23 Illinois Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Rule 23 Illinois Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

93.    This case will be manageable as a Rule 23 Class action. Plaintiff Brink and his counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

94.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

95.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Illinois Class, and because declaratory relief is appropriate in

21

this case with respect to the Rule 23 Illinois Class as a whole, class certification

pursuant to Rule 23(b)(2) is also appropriate

## RULE 23 LOUISIANA CLASS ACTION ALLEGATIONS

96.    Plaintiff Segura brings Count Five of this action pursuant to Fed. R. Civ.

P. 23(a) and (b)(3) on behalf of herself and all other members of the class ("the Rule

23 Louisiana Class") defined as:

> *All current and former customer service representatives or persons with jobs performing substantially identical functions and/or duties to customer service representatives employed by Defendant in the State of Louisiana during the applicable statutory period.*

97.    The Rule 23 Louisiana Class is so numerous that joinder of all class

members is impracticable. Plaintiff Segura is unable to state at this time the exact size

of the potential Rule 23 Louisiana Class, but upon information and belief, avers that

it consists of at least 100 persons. Rule 23 Louisiana Class members should be easy to

identify from Defendant's computer systems and electronic and personnel records.

98.    There are questions of law or fact common to the Rule 23 Louisiana

Class, including but not limited to the following:

(a) whether Defendant failed to pay overtime compensation to its customer representatives for hours worked in excess of 40 each workweek; and

(b) what amount of monetary relief will compensate Plaintiff Segura and other members of the Rule 23 Louisiana Class for Defendant's violations of the La. R.S. §§23:631, *et seq.*

99.    Plaintiff Segura's claims are typical of the claims of other members of the

Rule 23 Louisiana Class in that she and all other Rule 23 Louisiana Class members

suffered damages as a direct and proximate result of the Defendant's common and

systemic payroll policies and practices. Plaintiff Segura and the Rule 23 Louisiana Class members' claims arise out of the same uniform course of conduct by Defendant, and are based on the same legal theories.

100.    Plaintiff Segura will fairly and adequately protect the interests of the Rule 23 Louisiana Class. Her interests are not antagonistic to, but rather are in unison with, the interests of the other Rule 23 Louisiana Class members. The named Plaintiffs' counsel have broad experience in handling class action wage-and-hour litigation and is fully qualified to prosecute the claims of the Rule 23 Louisiana Class in this case.

101.    The questions of law or fact that are common to the Rule 23 Louisiana Class members predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Rule 23 Louisiana Class, listed above, are common to the classes as a whole and predominate over any questions affecting only individual class members.

102.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring the Rule 23 Louisiana Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Louisiana Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

103.    This case will be manageable as a Rule 23 Class action. Plaintiff Segura

and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

104.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

105.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Louisiana Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Louisiana Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

106.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

107.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

108.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

109.    At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the

FLSA.

110.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

111.    Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

112.    Plaintiffs either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

113.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

114.    The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

115.    At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiffs and all the proposed FLSA Collective members to perform pre-, mid- and post-shift work off the clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred, and the federally mandated

overtime compensation for all work performed over forty (40) hours per week.

116.    The off-the-clock work performed every shift by Plaintiffs and the proposed FLSA Collective was an essential part of their jobs and these activities and the time associated with these activities was significant and not *de minimis*.

117.    In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff's and the FLSA Collective's regular hourly rate.

118.    As a result of Defendant's unlawful policies and practices, Plaintiffs and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

119.    Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiffs and the proposed FLSA Collective members for all work activities, but did not.

120.    Plaintiffs and all others similarly situated are entitled to back pay as well as liquidated damages in an amount equal to their back pay. As a result of Defendant's FLSA violations, Plaintiffs and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same

time period calculated using the incorrect regular rate. The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

121.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

122.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

123.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on behalf of Defendant.

124.    Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

125.    Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for RCW work, which Plaintiffs accepted and performed, but

Defendant failed to perform by paying Plaintiffs and the Rule 23 Nationwide Class the promised wages.

126.    For example, Defendant offered to compensate Plaintiffs Brink and Segura $21.00 and $23.00 per hour, respectively, if they agreed to perform services for Defendant as RCWs. Plaintiffs Brink and Segura accepted Defendant's respective offers and performed their duties as RCWs in reliance on the offers.

127.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, was contractually entitled to a minimum hourly rate of approximately $20.00-30.00 per hour within the applicable period.

128.    Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- mid- and post-shift work described herein.

129.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member their fixed, pre-agreed upon hourly rate for *all* of the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

130.    Defendant can easily ascertain the amount of damages owed to Plaintiffs and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in

conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

131.    Plaintiffs and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

132.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

133.    As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

134.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

135.    This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

136.    At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for Defendant's benefit.

137.    Plaintiffs and every other Rule 23 Nationwide Class member relied upon

Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

138.     By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

139.     Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

140.     Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom. Despite this, Defendant did not pay Plaintiffs and the Rule 23 Nationwide Class members for all of their work.

141.     Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

142.     Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Nationwide Class for the same.

143.     Plaintiffs and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

144.     As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

### COUNT IV
### RULE 23 ILLINOIS CLASS ACTION
### VIOLATIONS OF THE ILLINOIS MINIMUM WAGE LAW ("IMWL"), §§ 820 ILCS 105/1, *et seq*. AND ILLINIOS WAGE PAYMENT AND COLLECTION ACT ("IWPCA"), §§ ILCS 115/1, *et seq*. - UNPAID WAGES (PLAINTIFF BRINK AND RULE 23 ILLINOIS CLASS)

145.     Plaintiff Brink re-alleges and incorporates all previous paragraphs herein.

146.     This count arises from Defendant's violation of the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq*., and Illinois Wage Payment and Collection Act, §§ ILCS 115/1, *et seq*., for its failure to pay Plaintiff Brink and the class he seeks to represent their straight time and overtime pay.

147.     At all relevant times to the action, Defendant was an "employer" within the meaning of the IMWL.

148.     At all relevant times, Defendant employed Plaintiff Brink and the Rule 23 Illinois Class were "employees" within the meaning of the IMWL and therefore entitled to the IMWL's protections. *See* §§ 820 ILCS 105/3(c)-(d).

149.     The IMWL, §§ 820 ILCS 105/1, et. seq. requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay for hours worked in excess of forty (40) per week. See §§ 820 ILCS 105/4; 820 ILCS 105/4a.

150.     820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "may recover in a civil action treble

31

the amount of any such underpayments together with costs and such reasonable attorney fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." § 820 ILCS 105/12(a).

151.    The IWPCA "applies to all employers and employees in [Illinois], … but excepting employees of the State or Federal governments." *See* §§ 820 ILCS 115/1. Plaintiff Brink and the Rule 23 Illinois Class were not employees of the State or Federal government, therefore, they are entitled to the protections of the IWPCA.

152.    Under 820 ILSC 115/4, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."

153.    Under 820 ILSC 115/5, "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

154.    As discussed herein, Defendant had a binding and valid contract with Plaintiff Brink and every other Rule 23 Illinois Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus any overtime pay required by applicable law, in consideration of the work duties Plaintiff Brink and the Rule 23 Illinois Class members performed on Defendant's behalf.

155.    For example, Defendant offered to compensate Plaintiff Brink at a minimum of $21.00 per hour, plus any overtime pay required by applicable law, if he agreed to perform services for Defendant, as a RCW. Plaintiff Brink accepted

Defendant's offer and performed under the contract by fulfilling his duties as a RCW, which included, but was not limited to, the pre-, mid-, and post-shift work activities required of him, in reliance on the offer.

156.    Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for RCW work, which Plaintiff Brink and the Rule 23 Illinois Class accepted and performed, including the unpaid pre-, mid-, and post-shift work activities described herein, but Defendant failed to perform by paying Plaintiff and the Rule 23 Illinois Class the promised wages for all work.

157.    Upon information and belief, each Rule 23 Illinois Class member, including Plaintiff Brink, was contractually entitled to a minimum hourly rate of approximately $21.00 per hour within the applicable period, in addition to applicable overtime premiums.

158.    Plaintiff Brink and every other Rule 23 Illinois Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid-, and post-shift work described herein.

159.    Defendants breached their contractual promises by failing to pay Plaintiff Brink and the Rule 23 Illinois Class for all wages (regular and overtime) owed.

160.    Plaintiff Brink and the Rule 23 Illinois Class also did not receive accurate

wage statements that detailed each hour worked and their rate of pay because Defendant failed to include the compensable time discussed herein in the paystubs provided to Plaintiff and the Rule 23 Illinois Class.

161.    Additionally, 820 ILCS 115/14(a) provides that an employee aggrieved by an employer's violation of the Illinois Wage Payment and Collection Act "shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

162.    Defendant willfully, knowingly and/or recklessly violated the IMWL and the IWPCA by regularly and repeatedly failing to compensate Plaintiff Brink and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint.

163.    As a result, Plaintiff Brink and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff Brink and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, treble damages, costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

### COUNT V
### La. C.C.P. Art. 591 CLASS CLAIMS
### VIOLATIONS OF La. R.S. §§23:631 and 23:632

164.    Plaintiff Segura realleges and reincorporates paragraphs 1-144 herein.

165.   This count arises from Defendant's violation of La. R.S. §§23:631, *et seq*., for its failure to pay Plaintiff Segura and the class she seeks to represent their straight time and overtime pay.

166.   Throughout her employment, Plaintiff Segura and the class members were "employees" for the purposes of La. R.S. §§23:631 and 23:632.

167.   Throughout their employment, Defendant was an "employer" for the purposes of La. R.S. §§23:631 and 23:632.

168.   Plaintiff Segura, through her counsel, sent notice of her dispute and demand for payment to Defendant on August 5, 2024, and did not file her lawsuit until August 9, 2024, pursuant to the notice requirement of La. R.S. §23:632(c).

169.   At all times relevant to this action, Defendant employed Plaintiff Segura and the Rule 23 Louisiana class and had a duty to pay the amount due under the terms of employment, namely a pre-established (contractual) regular hourly rate in consideration of the work duties they performed on behalf of Defendant.

170.   Plaintiff Segura and the putative class's contractual hourly rates are identified in paystubs and other records that Defendant prepares as part of its regular business activities. Defendant offered to compensate Plaintiff Segura $23.00 per hour if she agreed to perform services for Defendant as a RCW.

171.   Defendant failed to fully compensate Plaintiff Segura and the putative class for the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid-, and post-shift work described above, within fifteen days of their resignation or by the next payday for the

pay cycle in which they resigned, in violation of La. R.S. §§23:631(A)(1)(b) and 23:632(A).

172.   By not paying Plaintiff Segura and the Rule 23 Louisiana Class members their fixed, pre-agreed upon hourly rate for *all* of the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff Segura and the Rule 23 Louisiana Class members.

173.   Defendant can easily ascertain the amount of damages owed to Plaintiff Segura and the class based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by Plaintiff Segura and each class member.

174.   The good faith exception identified in La. R.S. §23:632 does not apply here, as Defendant breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff Segura and the class spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

175.   Pursuant to La. R.S. §23:632(a), Ms. Segura is entitled to recover ninety days of wages at her daily rate of pay, or the full wages from August 5, 2024 (when Ms. Segura made her demand for payment) until the time Defendant pays the unpaid wages due to Plaintiff Segura, whichever is lesser, as Defendant failed to pay Plaintiff Segura's wages and refused to comply with La. R.S. §23:631.

176.   Plaintiff Segura and the Rule 23 Louisiana Class are entitled to attorneys fees if their claim prevails pursuant to La. R.S. §23:632.

177.    Plaintiff Segura and the Rule 23 Louisiana class accordingly seek their unpaid wages and attorney fees pursuant to La. R.S. §§ 23:631 and 23:632.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request the following relief:

a.    An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract and unjust enrichment claims (Counts II and III);

c.    An Order certifying this action as a class action (for the Rule 23 Illinois Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff Brink's state law claims under the IMWL and IWPCA (Count IV);

d.    An Order certifying this action as a class action (for the Rule 23 Louisiana Class) pursuant to La. C.C.P. Art. 591 with respect to Plaintiff Segura's state law claim under La. R.S. §§23:631 and 23:632 (Count V);

e.    An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, Rule 23 Nationwide Class members, Rule 23 Illinois Class members, and Rule 23 Louisiana Class members, and authorizing Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

f.    An Order designating the Plaintiffs as representatives of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class Counsel for the same;

g.    An Order designating Plaintiff Brink as representative of the Rule 23 Illinois Class, and undersigned counsel as counsel for the same;

h.    An Order designating Plaintiff Segura as representative for the Rule 23

Louisiana Class, and undersigned counsel as counsel for the same;

i.      An Order declaring that Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

j.      An Order declaring that Defendant's violations of the FLSA were willful;

k.      An Order declaring that Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for mandatory pre-, mid-, and post-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

l.      An Order declaring that Defendant violated Illinois wage-and-hour law;

m.      An Order declaring Defendant violated Louisiana state law;

n.      An Order granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs, the FLSA Collective, the Rule 23 Nationwide Class, the Rule 23 Illinois Class, and the Rule 23 Louisiana Class the full amount of damages, liquidated damages, and punitive damages available by law;

o.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in prosecuting this action as provided by statute;

p.      An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

q.      An Order awarding such other and further relief as this Court deems appropriate.

## <u>JURY DEMAND</u>

Plaintiffs Andrew Brink and Fartina Segura individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: August 9, 2024                          Respectfully Submitted,

      */s/ Julia Ozello*
Julia Ozello (IL ARDC# 6336504)
Mark R. Miller (IL ARDC# 6283542)
**WALLACE MILLER**
150 N. Wacker Dr., Suite 1100
Chicago, Illinois 60606
Telephone: 312-261-6193
jo@wallacemiller.com
mrm@wallacemiller.com

Jason J. Thompson (P47184)
Alana A. Karbal (P82908)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
jthompson@sommerspc.com
akarbal@sommerspc.com

*Attorneys for Plaintiffs and the Putative Class/Collective Action Members*