IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANDREW BRINK and FARTINA SEGURA,
individually and on behalf of all others similarly
situated,

|  |  |
|---|---|
| Plaintiffs, | OPINION and ORDER |
| v. | 24-cv-562-jdp |
| AMERICAN FAMILY MUTUAL INSURANCE<br>COMPANY, S.I., |  |
| Defendant. |  |

---

Plaintiffs Andrew Brink and Fartina Segura were customer service representatives who worked remotely for defendant American Family Mutual Insurance Company and received an hourly wage. Plaintiffs allege that American Family did not pay them for time spent booting up their computers, logging in, and loading various programs before taking calls or for doing the same process in reverse before breaks or at the end of the workday. Plaintiffs contend that all that time qualifies as work that must be compensated, and they assert claims under the Fair Labor Standards Act (FLSA) and state law. Plaintiffs seek to represent an FLSA collective and multiple state-law classes of what they call "remote call workers."

Plaintiffs move for conditional certification of a collective under 29 U.S.C. § 216(b). Dkt. 20. The court will deny the motion without prejudice because plaintiffs have not made a modest factual showing that they are similarly situated to the proposed collective.

ANALYSIS

## A. Overview of the legal standard and issues raised by the parties

Section 216(b) of the FLSA authorizes plaintiffs to bring "collective actions" against employers to recover unpaid compensation for themselves and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). Many courts, including this one, apply a two-step approach to determining whether members of a proposed collective are similarly situated.

Courts call the first step "conditional certification," which requires the plaintiffs to make a "modest factual showing" that they and potential collective members were subject to a common policy or practice related to their claims under the FLSA. *Wallis v. Oz Mgmt. Grp., Inc.*, No. 21-cv-290-jdp, 2022 WL 2452628, at *1 (W.D. Wis. July 6, 2022); *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 628–29 (W.D. Wis. 2009). The inquiry focuses on "whether potential plaintiffs are sufficiently similar to believe a collective action will facilitate efficient resolution of a legal dispute involving claims which share common questions and common answers," *Holmes v. Sid's Sealants, LLC*, No. 16-cv-821, 2017 WL 5749684, at *2 (W.D. Wis. Nov. 28, 20 17) (internal quotations omitted). This is similar to the "commonality" and "typicality" analysis for class certification under Federal Rule of Civil Procedure 23, but with a lower burden of proof. *See Freeman v. Total Sec. Mgmt.-Wisconsin, LLC*, No. 12-cv-461-wmc, 2013 WL 4049542, at *4–5 (W.D. Wis. Aug. 9, 2013). If the plaintiffs meet that standard, the court authorizes the plaintiffs to send notice of the claims to the collective's members. *De Leon v. Grade A Constr. Inc.*, No. 16-cv-348, 2017 WL 1957537, at *2–3 (W.D. Wis. May 11, 2017).

At the second step, the defendants may move for "decertification," at which point the court uses the facts developed in discovery to re-evaluate whether the members of the collective are similarly situated. *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 358 (W.D. Wis.

2014). At that stage, the court applies a more demanding standard that is akin to the one applied for class actions. *See Jones v. Cruisin' Chubbys Gentlemen's Club*, No. 17-cv-125-jdp, 2018 WL 1175412, at *2 (W.D. Wis. Mar. 6, 2018) (citing *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013)).

In this case, plaintiffs seek to send notice to all of American Family's remote call workers, regardless of job title or location, who were employees within the three years before the filing of the complaint to the present. Dkt. 1, ¶ 65.[1] Plaintiffs say that all of these employees are similarly situated because they were all required to perform unpaid work at the beginning and end of their shifts, and before and after breaks. Specifically, plaintiffs say that they were not paid for the time spent booting up or powering down their computers, logging in and logging off their computers, or opening or closing various programs they needed to use when taking customer calls. They rely primarily on their own declarations and the declarations of five employees who have opted in to the collective. Dkts. 22–28.

American Family opposes plaintiffs' motion. As an initial matter, American Family objects to the standard applied by this and numerous other courts for determining when notice should be sent to the proposed collective, and it asks the court to follow *Laverenz v. Pioneer Metal Finishing, LLC*, 746 F. Supp. 3d 602 (E.D. Wis. 2024) (Griesbach, J.). In that case, the court determined that it would not authorize notice to the proposed collective until after the parties conducted discovery and only if the plaintiffs show: (1) they are similarly situated to the members of the collective under a preponderance-of-the-evidence standard; (2) some likelihood of success on the merits. *Id.* at 616.

---

[1] American Family refers to these employees as customer service and sales representatives, but the parties appear to agree that they are referring to the same type of employees.

Regardless of the standard the court applies, American Family contends that it "has always paid its customer service representatives for the log on/log off time" in accordance with company policy, Dkt, 29, at 2, and the declarations plaintiffs submitted do not show widespread deviation from the policy, so they have not shown that they are similarly situated to other remote call workers. Alternatively, American Family contends that plaintiffs have not demonstrated sufficient interest among employees to justify notice to the proposed collective and that two employees who have already consented to join the lawsuit—Michelle Moody and Randy Yarl—are not similarly situated.

The court will deny American Family's request to apply *Laverenz* in this case. But the court will also deny plaintiffs' motion for conditional certification because plaintiffs have not satisfied even the more lenient standard this court traditionally applies. As explained below, plaintiffs have not made even a modest showing that they are similarly situated to the collective. This makes it unnecessary to consider American Family's arguments about the level of interest in the collective and about whether Moody and Yarl are similarly situated to the proposed collective.

## B. Request to alter test for authorizing notice

American Family's request to alter the process and evidentiary burden for authorizing notice to the collective is untimely. The process adopted in *Laverenz* begins "at the outset of the case." 746 F. Supp. 3d at 616. So if American Family wanted the court to depart from its usual practice and follow *Laverenz*, American Family should have filed a motion before Magistrate Judge Anita Boor set deadlines based on the court's regular practice. American Family is trying to have it both ways by asking the court to impose a higher burden on plaintiffs to obtain conditional certification while at the same time depriving plaintiffs of the discovery

necessary to meet a higher burden. American Family cannot change the rules after they were already set without objection from either party. In any event, the evidentiary burden does not make a difference in this case, as the court will explain in the next section.

In the alternative, American Family asks the court to stay the case pending a decision in *Richard v. Eli Lilly & Co.*, No. 24-2574, in which the Court of Appeals for the Seventh Circuit is considering the appropriate standard to apply when the plaintiff is seeking to send notice to the proposed collective in an FLSA case. A stay is unnecessary because, again, the evidentiary burden the court applies would not make a difference to the outcome of plaintiffs' motion.

## C. Similarly situated analysis

There is no dispute that the members of the proposed collective have similar jobs and responsibilities. The question is whether plaintiffs and the proposed collective are all being denied pay for the same activities. Plaintiffs have not made a modest factual showing that they are similarly situated to the proposed collective in that respect.

In their opening brief, plaintiffs relied primarily on their declarations and the declarations of the five employees who have consented to join the collective. Dkts. 22–28.[2] These declarations are nearly identical. As American Family points out, the declarations also use much of the same wording as the declarations that the same counsel used in a different case raising similar claims against a different defendant. *See* Dkt. 30-1.

When a party submits multiple declarations that appear to be largely cut and paste from a template, it raises the question whether the declarations are truly based on the witnesses'

---

[2] Plaintiffs also relied on several job descriptions. Dkt. 21-11; Dkt. 21-12; Dkt. 21-13. But American Family concedes that plaintiffs and the proposed collective performed the same functions, Dkt. 29, at 2, so the court need not consider that issue.

personal knowledge or are concealing factual differences among the witnesses. For example, in *Viveros v. VPP Group, LLC*, the plaintiffs supported their motion for conditional certification with more than two dozen, virtually identical declarations of collective members. No. 12-cv-129-bbc, 2013 WL 3733388, at *9 (W.D. Wis. Jul. 15, 2013). The court granted the motion, but collective members later provided deposition testimony that was inconsistent with the declarations, and it appeared that some of them were not even aware of what they had signed. *Id.*

Declarations are not necessarily invalid simply because they are similar. This court has considered declarations in support of a motion for conditional certification even when they appeared to be largely identical. *See Loch v. American Family Mutual Insurance Company*, No. 22-cv-213-jdp, 2023 WL 2877598, at *2 (W.D. Wis. Mar. 3, 2023). In this case, the problem is not simply that the declarations are the same; it is that they are too general and vague, especially on issues most relevant to determining whether the witness's experience is likely to be shared with the collective.

For example, each of the declarations include the following sentence: "American Family Agents, including myself, were routinely evaluated, and at times disciplined, based on call handling, script adherence, key performance metrics ("KPIs"), and schedule adherence metrics that tracked the amount of time we spent clocked in but were unavailable to take calls." *See*, *e.g.*, Dkt. 22, ¶ 11. Presumably, the employees mean to allege that they were disciplined for clocking in before being ready to take calls. But none of the witnesses provide any examples of this happening, identify who at American Family did this, or explain how the witnesses were disciplined or what specifically they were disciplined for.

6

The witnesses also say that "American Family trained and required Agents, like myself, to have [certain] computer and software programs, applications and scripts open before we fielded our first customer query and prohibited us from clocking in until after they were opened and our scheduled shifts began." *See, e.g.*, Dkt. 28, ¶ 14. Again, the witnesses do not provide any examples, and they do not identify the "train[ing]" they received to delay clocking in.

Each of the witnesses also included similar statements about how they know that their experience is shared by other employees. Fartina Segura included the following two paragraphs:

> 31. I had multiple conversations with one or more [other employees] via Teams chat regarding Agent job duties and responsibilities, and during these chats we made recommendations and/or suggestions to one another on how to perform our responsibilities and shared articles to assist one another. I also connected with Agents via Discord chat outside of scheduled working hours and during these conversations we discussed our job duties and American Family's policies. I also had numerous conversations with some of these Agents about Defendant's policies and procedures, metrics, and training.

> 32. From these conversations, being in the same training group as them, working on the same team as them, connecting via Microsoft Teams and/or other chat forums, and/or attending group Microsoft Teams huddles, I know that American Family's Agents experienced the same issues that I describe, performed essentially the same tasks as me, and were subject to the same policies, metrics, and pay practices regardless of the formal job title they held.

Dkt. 23. The other witnesses say largely the same thing. None of them provide examples, identify the content of their conversations with any specificity, or even identify the "policies, metrics, and pay practices" they were subjected to.

Even at the conditional certification stage, plaintiffs cannot rest on conclusory allegations. *Campeau v. NeuroScience, Inc.*, 86 F. Supp. 3d 912, 917–18 (W.D. Wis. 2015). The primary reason for imposing a lower burden of proof for conditional certification is that

discovery is still at an early stage, so it would be unfair to require plaintiffs to come forward with evidence they have not had an opportunity to obtain. But that rationale does not apply to the plaintiffs' own declarations based on their own personal knowledge. Limited discovery does not prevent plaintiffs from providing details of their own experiences and observations.

Even if plaintiffs' declarations would be enough for a modest factual showing in isolation, the court must evaluate them in context of other evidence in the record. For example, American Family submitted training materials for customer service representatives that expressly direct such employees to report all of their time worked, including the type of activities that are the subject of this lawsuit. For example, the materials state, "Log on/off time should also be reported if you are required to be logged in to systems to be ready to start work at the start of your shift." Dkt. 32-5, at 4. The training goes on to explain how employees correct their timecard to reflect the time spent logging on and off. *Id.* at 7–11. American Family represents that all customer service representatives received the training beginning in September 2023. Dkt. 32, ¶ 15. The proposed collective period includes time that both precedes and follows that date, but American Family says that three of the employees who have opted in participated in the training. *Id.*, ¶ 16. At a minimum, the policy raises additional doubts about whether plaintiffs are similarly situated to employees trained after September 2023.

In their reply, plaintiffs do not dispute that American Family provided this training or that some of the opt-in plaintiffs received it. In fact, plaintiffs ignore the training materials in their reply brief. Instead, they rely on two versions of what the parties call American Family's "Start and End of Day Policy." Dkt. 32-3. Plaintiffs say that the policy shows that "Defendant does not view the time Plaintiffs must spend logging in, authenticating, and loading the payroll

system as compensable time, they are in turn not compensated for this lost time, and Defendant applies this policy to all putative collective members." Dkt. 34, at 3.

Plaintiffs do not quote language from the policy that supports their argument, and the court's review of the policy did not uncover such language. To begin with, the policy does not discuss what activities qualify as compensable time. Rather, it is more of a checklist for what employees need to do at the beginning and end of their shift. In any event, the policy directs employees to clock in *before* loading programs on their computer, *see* Dkt. 32-3, at 3, 9–10, which is contrary to what plaintiffs allege. Plaintiffs do not address this discrepancy in their reply materials.

It is true that the policy instructs employees to "clock in" using American Family's time-tracking software after they login to their computer. *See id.* at 2–3, 8–9. But plaintiffs do not explain how else this process could be performed. Employees who use their computers to clock in cannot perform this step before they are logged in to their computer. The policy does not state whether time spent logging in is paid, but it does say that employees "may need to manually enter [their] time," *id.* at 3, which leaves open the possibility that employees can enter the time they logged in.

The evidence submitted by American Family does not conclusively show that it is consistently paying its remote call workers for the activities at issue in this lawsuit. After all, the existence of a policy does not mean that an employer is properly enforcing its policy. *See Espenscheid v. DirectSat USA, LLC*, 09–cv–625–bbc, 2010 WL 2330309, at *7 (W.D. Wis. June 7, 2010). If plaintiffs had submitted a significant number of detailed declarations from employees in different states demonstrating that American Family was consistently directing or allowing remote call workers across the country to exclude from their time the activities at

issue in this case, the court would have granted plaintiffs' motion for conditional certification. But plaintiffs have not made even a modest factual showing that there is a consistent practice of not paying remote call workers for those activities, so the court will not authorize notice to the proposed collective.

Plaintiffs are free to renew their request to certify a collective if and when they move to certify a class of their state-law claims under Federal Rule of Civil Procedure 23. In the meantime, if the employees who have filed consent forms wish to join the case, plaintiffs will have to file an amended complaint that includes those employees as named plaintiffs, and they will have to satisfy the joinder requirements under Federal Rule of Civil Procedure 20.

ORDER

IT IS ORDERED that plaintiffs' motion for conditional certification of a collective under 29 U.S.C. § 216(b), Dkt. 20, is DENIED without prejudice.

Entered May 22, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge